IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. CALETHA WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-CV-5006 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| PARK FOREST-CHICAGO HEIGHTS SCHOOL DIST. 163; MARGARET MCDANNEL, in her individual capacity, KIMBERLY ELMORE-PERKINS, in her individual capacity, CHRISTINA DUPEE, in her individual capacity, JACQUELINE JORDAN, in her individual capacity, DR. JOYCE CARMINE, in her individual capacity, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Dr. Caletha White brings the instant complaint against defendants: Park Forest-Chicago Heights School District 163 ("the District"); Margaret McDannel ("McDannel"), in her individual capacity; Kimberly Elmore-Perkins ("Elmore-Perkins"), in her individual capacity; Christina Dupee ("Dupee"), in her individual capacity; Jacqueline Jordan ("Jordan"), in her individual capacity; and Dr. Joyce Carmine, in her individual capacity ("Carmine") (collectively "defendants"). Count I alleges that defendants McDannel, Elmore-Perkins, Dupee, and Carmine tortiously interfered with plaintiff's employment contract under Illinois law; Count II alleges that defendants violated plaintiff's right to due process under the Fourteenth Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983. On October 23, 2023, defendants moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike plaintiff's request for punitive damages (Doc. 9). For the reasons discussed below, the court grants defendants' motion.

## BACKGROUND

According to the facts alleged in plaintiff's complaint, the District is an Illinois municipality, and may be sued through the Board of Education ("the Board").[1] The Board is responsible for administering six public schools in Park Forest and Chicago Heights, Illinois, and is the sole policymaking body for the District. The District employed plaintiff as superintendent under three successive employment contracts beginning in 2018. Plaintiff alleges that the Board recently extended her contract in February 2023 after it "unanimously determined Plaintiff had achieved all its targeted goals." The Board extended plaintiff's contract until June 30, 2025. However, on May 31, 2023, the Board voted to place plaintiff on indefinite paid administrative leave pending possible reassignment.

Also on May 31, 2023, the Board replaced plaintiff with defendant Carmine as interim superintendent. Conversely, plaintiff had replaced Carmine as superintendent when she began in 2018. Plaintiff alleges that at all relevant times, defendants McDannel, Elmore-Perkins, Jordan, and Dupee were members of the Board. McDannel and Elmore-Perkins were elected to the Board in April 2023, when they replaced two members who had supported plaintiff's contract extension. Currently, McDannel is the president of the Board. According to plaintiff, McDannel, Elmore-Perkins, and Dupree swore an oath under Illinois statutory law when they joined the Board that "they had no power except when they were voting at a duly noticed meeting of the Board." Plaintiff alleges that McDannel, Elmore-Perkins, and Dupree were required to undergo training on the principles of good governance for school boards from the State of Illinois, and "[o]ne of the primary principles is that board members are not allowed to

---

[1] The complaint states that the District may sue and be sued through the Board pursuant to Illinois School Code, 105 ILCS 5/10-2, but as defendants point out, the case caption lists the District, not the Board, as a defendant. In their motion, however, defendants treated the Board as if it were the properly named party.

interfere in the day-to-day management of the schools in their districts." While the Board supervised plaintiff and set District policy, plaintiff alleges that she, as superintendent, "had sole responsibility for administering the day-to-day operations of all aspects of the District's schools."

However, plaintiff alleges that "Carmine contacted members of the Board in March 2023 to urge them to terminate Plaintiff's contract and pay her to go away." She alleges that "[o]n information and belief, Carmine hatched a plan with McDannel and Elmore-Perkins to oust Plaintiff from her position and replace her with Carmine after they were elected to the Board." According to plaintiff, McDannel "set the plan in motion" on May 2, 2023, by "demanding a meeting with Plaintiff and her staff to review all documents relating to the District's operations, contracts, staffing, and budget." McDannel was allegedly not acting under Board authority, but rather "was told to do this by individual members without Board approval."

Consequently, "[r]ealizing that this action violated the Contract and Illinois law, Plaintiff felt compelled to notify the Board on May 8, 2023, that she intended to retire on June 30, 2024, even though she did not wish to retire." Plaintiff alleges that McDannel, Elmore-Perkins, and Dupee "communicated with Plaintiff's employees" to "countermand her orders and interfere with Plaintiff's ability to manage the District." She also alleges that McDannel "demanded that she fire an employee because she was related to a former Board member," and "[w]hen plaintiff resisted, McDannel went around Plaintiff directly to staff and had the employee terminated by the Board." Moreover, plaintiff alleges that McDannel told to her to change the negotiating team that was working on the District's collective bargaining agreement, and took control over the budget. Further, plaintiff alleges that McDannel "contacted staff directly and demanded personnel information and employment contracts for certain employees."

3

Plaintiff then alleges that she wrote a letter to McDannel, in McDannel's capacity as Board president, and the Board's vice president to request a meeting "to clarify her role as superintendent." Instead of responding to the letter, McDannel allegedly used her control over the Board's agenda "to make sure Plaintiff's letter was ignored."

On May 31, 2023, McDannel allegedly called a special Board meeting to terminate plaintiff, and before the meeting, told certain employees that plaintiff would be terminated and replaced by Carmine. On May 24, 2023, a former Board member allegedly hosted a live Facebook event that announced that plaintiff would be terminated, and similarly, "[l]eaks to the media" stated that plaintiff would be terminated. Plaintiff further alleges that Elmore-Perkins gave an interview before the meeting, in which she stated that plaintiff was being terminated for her "failure to monitor former Board member's use of District credit cards," although Elmore-Perkins allegedly stated in closed session that she "was removing Plaintiff because of the way she was treated when she was reassigned during her employment in the District." As discussed above, plaintiff alleges that the Board voted to place plaintiff on paid leave, and the Board issued a resolution stating that plaintiff had resigned as of June 2024.

Plaintiff complains that she was not present at the special Board meeting, and she was "effectively terminated." According to plaintiff, McDannel instructed staff not to notify plaintiff of the meeting, and "[t]he District's attorney was also instructed to tell Plaintiff not to attend." Following the meeting, plaintiff alleges that McDannel notified her that she was barred from school property, and ordered staff to retrieve her key card, phone, iPad, and hard drive. According to plaintiff, McDannel also directly announced to staff that plaintiff was removed. She complains that she "has lost future earning potential as her ability to obtain future employment as a superintendent has been adversely affected," and the Board has "deprived [her]

4

of the opportunity to extend her Contract and increase her salary." Plaintiff also complains that McDannel allegedly prevented the District from "paying certain vacation benefits owed under Plaintiff's contract."

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## DISCUSSION

Defendants move to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). Regarding plaintiff's claim pursuant to § 1983, defendants argue that the Seventh Circuit has consistently rejected similar claims under the Fourteenth Amendment, and regardless, they are entitled to qualified immunity. Defendants also argue that plaintiff has failed to allege that defendants tortiously interfered with her employment contract. The court evaluates each count separately.

First, the court evaluates whether plaintiff has stated a claim for defendants' alleged violation of her right to due process under the Fourteenth Amendment in Count II. To state a claim for a procedural due process violation, a plaintiff must plead: (1) conduct by someone acting under the color of law; (2) that the conduct deprived plaintiff of a protected property

5

interest; and (3) the deprivation occurred without due process of law. See Redd v. Nolan, 663 F.3d 287, 296 (7th Cir. 2011). The U.S. Constitution does not confer property rights nor define the scope of property interests protected by the Fourteenth Amendment, but state law and contracts may create property interests. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576–77 (1972). Defendants argue that plaintiff was not entitled to a due process hearing because she has not plausibly alleged that she was deprived of such an interest.

In the Seventh Circuit, public employees have a constitutionally protected entitlement (i.e., a property interest) when they are employed under a contract for a fixed period that can be terminated only for cause. See Baird v. Board of Educ. for Warren Comm. Unit School Dist. No. 205, 389 F.3d 685, 692–93 (7th Cir. 2004). Conversely, "[p]urely dignitary or otherwise nonpecuniary dimensions of employment are not property interests protected by the due process clause of the Fourteenth Amendment." Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 530 (7th Cir. 2000) (internal quotations omitted). A plaintiff "must show some economic loss from the Board's actions, or at least establish an identifiable impact on [her] future income or economic benefits." Id. She must demonstrate that such deprivation is more than de minimis to be actionable. See id.

Specifically, the Seventh Circuit has determined that suspension with pay is generally not actionable unless the suspension imposes a "substantial indirect economic effect on the plaintiff." Palka v. Shelton, 652 F.3d 447, 452 (7th Cir. 2010). In Batagiannis v. West Lafayette Community School Corporation, 454 F.3d 738, 740 (7th Cir. 2006), the Seventh Circuit stated that "[t]he due process clause secures private interests against public deprivation," and "[g]overnmental powers are not themselves private property." The court determined that a school superintendent "may well have a property interest in the office's emoluments but not in

6

the office itself." Id. It further reasoned that "[e]very appellate decision that has addressed the subject accordingly has held that a contractual right to be a superintendent of schools creates a property interest in the salary of that office but not the ability to make decisions on behalf of the public." Id. at 740 (collecting cases). The Seventh Circuit rejected a similar argument in Ulichny v. Merton Community School District, 249 F.3d 686, 702 (7th Cir. 2001), holding that the plaintiff did "not have a recognized property interest in performing particular duties as a principal."

In the instant case, plaintiff admits that she is on paid administrative leave until June 2024, but argues that she has been "deprived of the ability to work according to the terms of her Contract" and has "effectively, been fired." It may be true, as plaintiff argues, that defendants have "made it impossible for Plaintiff to achieve the written goals in her employment contract," and "[t]herefore, by law, she cannot receive an extension of her Contract." Yet, plaintiff's actionable alleged property interest is in her salary and benefits for a fixed contractual term, not her contract's extension (which, according to the complaint, is not guaranteed but depends on Board vote). Under Batagiannis and Ulichny, plaintiff does not have a property interest in "performing particular duties" as superintendent, and thus, she does not have an actionable property interest in demonstrating that she accomplished the goals in her contract.[2]

Plaintiff also argues that she was deprived of a property interest because she has lost future earning potential through her adversely affected ability to obtain future employment. Defendants counter that this allegation is insufficient because plaintiff's retirement notice "undermines any inference that Plaintiff is seeking future job opportunities as a superintendent in

---

[2] Plaintiff cites Bordelon v. Chicago School Reform Board of Trustees, 8 F. Supp. 2d 779 (N.D. Ill. 1998), for the opposite conclusion, but Bordelon was decided before the Seventh Circuit's rulings in Batagiannis and Ulichny, as well as before the Seventh Circuit ruled on the defendant's appeal in Bordelon v. Chicago School Reform Board of Trustees, 233 F.3d 524 (7th Cir. 2000).

7

the District or elsewhere." The court, however, views the facts in the light most favorable to plaintiff, and notes that defendants largely glaze over plaintiff's allegation that she involuntarily retired, or was "constructively discharged." Constructive discharge occurs when an employer makes employment "so unbearable that an employee resigns." Palka v. Shelton, 652 F.3d 447, 453 (7th Cir. 2010). In Ulichny, the Seventh Circuit rejected the plaintiff's constructive discharge allegation where she alleged that, among other things, her supervisor: took control over the school and student discipline; assigned plaintiff to the duties of a $10/hour aide; displayed to the public that she would have no supervisory duties over anyone; and told her to get a new job. 249 F.3d 686, 703 (7th Cir. 2001). The Ulichny court explained that the plaintiff's circumstances were not "objectively intolerable." Id. at 704.

In the instant case, the court concludes that plaintiff has not plausibly pled that she was constructively discharged. Plaintiff alleges that she felt "compelled" to notify the Board of her intent to retire because McDannel allegedly "demand[ed] a meeting with Plaintiff and her staff to review all documents relating to the District's operations, contracts, staffing, and budget." McDannel's "demand" is not the type of conduct that would constitute the type of hostile work environment that would support a constructive discharge claim. See Swick v. City of Chicago, 11 F.3d 85, 88 (7th Cir. 1993). See also Chapin v. Fort-Rohr Motors, Inc., 621 F.3d 673, 679 (7th Cir. 2010) (noting that "a working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background'").

In addition, plaintiff's intended retirement date (June 30, 2024) was more than one year after she rendered her retirement notice. Moreover, plaintiff announced her intent to retire on May 8, 2023, over two weeks before the Board voted to place her on administrative leave. As the Seventh Circuit determined in Swick v. City of Chicago, 11 F.3d 85, 88 (7th Cir. 1993), "[i]t

8

is implicit in these cases that the actionable event is the discharge, not the petty harassments which may have cumulated to an unbearable level." Thus, it is implausible for plaintiff to allege that she retired because the Board placed her on paid administrative leave.

In addition, plaintiff has failed to plausibly plead that "her career growth and earnings will be reduced, as well as the income she will receive after retirement," because her allegations are conclusory. Plaintiff attempts to bolster her argument by stating that she "is unable to take another job where she might grow her professional skills and experience," and "instead, she is forced to sit idly and do nothing," but plaintiff's complaint does not contain these allegations. It is true that the Seventh Circuit has "recognized that a loss of position that impedes future job opportunities or has other indirect effects on future income can inflict an actionable deprivation of property." Head v. Chicago Sch. Reform Bd. of Trustees, 225 F.3d 794, 803 (7th Cir. 2000). In the instant case, however, as discussed above, plaintiff notified the Board of her intent to retire before the Board placed her on administrative leave.

Likewise, the court concludes that plaintiff's allegation that she has suffered financial loss due to defendants' refusal to "pay[ ] certain vacation benefits owed under Plaintiff's contract" is conclusory. In Baerwald v. City of Milwaukee, 131 F.3d 681, 683 (7th Cir. 1997), the Seventh Circuit stated that "it cannot be that . . . every denial of a fringe benefit . . . is, unlike discharge, or suspension without pay, or permanent refusal to reinstate, a constitutional controversy just because the employee is a tenured public employee." (Internal citations omitted).³ In the instant case, plaintiff remains on administrative leave and her employment does not end until June 2024. Ostensibly, even assuming that defendants have thus far not paid

---

³ In Crim v. Board of Education of Cairo School District 1, 147 F.3d 535, 547 (7th Cir. 1998), the Seventh Circuit held that the district court had properly determined that the plaintiff did not establish a property interest in unpaid "accrued vacation pay" because his claim "remain[ed] unsubstantiated." Crim, however, is not helpful in the instant case because the Seventh Circuit evaluated Crim at summary judgment, not the pleading stage.

9

vacation benefits that plaintiff is entitled to receive, defendant could still pay plaintiff's vacation benefits before she retires.

Because the court concludes that plaintiff has not plausibly alleged that defendants deprived her of a property interest without due process, it is not necessary to determine whether the individual defendants (McDannel, Elmore-Perkins, Dupee, Jordan, and Carmine) are protected by qualified immunity. The court grants defendants' motion to dismiss Count II.

Moreover, because Count II is the only claim that would provide federal jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state law claim for tortious interference of contract in Count I. See 28 U.S.C. § 1367(c)(3). Without jurisdiction over Count I, it is unnecessary to evaluate whether to strike plaintiff's claim for punitive damages.

## CONCLUSION

For the reasons stated above, the court grants defendants' motion to dismiss Count II (Doc. 9), and declines to exercise supplemental jurisdiction over Count I.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: December 28, 2023**